Incorporated, arguing it's not going to exceed 15 minutes per side. I'm Mr. Van Essen for the appellant. You may proceed. Thank you, Your Honor. May it please the court. I wish to first address the defendant, Apple Lee's principal brief. And if you read their brief, you would see that there is a lot of information in there.  You would think that what Saginaw County is doing with its underlying contract with MMR and the enforcing ordinance is something unusual in the state of Michigan or in the country generally. And it's not. The Public Health Code of Michigan, 333.20948, allows municipalities, including Michigan counties, to either operate their own ambulance company, like the City of Detroit does and the City of Lansing does, or to contract with a private sector. Can I ask a question? This is a very funny case because in one sense, there's no doubt we have a dispute. So in that sense, you have a position about this, they have a position, so it's hard to deny a dispute. I will say it's kind of unusual for cities or states to launch deck actions to say what we're about to do in this enforcement action we can do. That's not how this usually works. Usually the way it works is it becomes concrete by, say, enforcing the ordinance. Given that you had a problem with Judge Berg and you probably do want this dispute resolved, what is the downside with saying to them, no more, we're enforcing it starting next week? And at that point, I think Judge Berg would agree you've got a concrete dispute and as applied. Is this all turned on the risk of trouble damages and fees? Is that what's going on? It does, Your Honor. So on trouble damages, I think there's an exemption for cities and counties. So that risk is gone, and I think attorneys' fees don't apply in any trust actions involving cities or counties. So if I'm right about those things, what's left? I'm not sure you're right about the attorneys' fees. For any trust? Yes, I'm not positive about that, Your Honor, but you may be wrong about that. That's unusual. No, it's possible, but I guess you still have fees with the constitutional claim. That's a risk. Under 1983, correct. Well, 88 is the fees, actually. So if we were to enforce our ordinance, and the county has more control than you might think over the ambulance system in the sense that it controls the dispatch. I still don't have an answer to my question. I want you to answer that question first. You guys want this resolved. We do want it resolved. So we could have one of our Sheriff's Department vehicles write them a ticket when we see them doing a transport or an emergency call that didn't go through the 911 system, which we control. We could write a ticket, we could go to district court where our ordinance would be enforced, but the district court in the state of Michigan would not have jurisdiction over the antitrust and 14th Amendment claims, which are really the heart of STAT's claims. They would have jurisdiction if the other side raised it as a defense, right? If they said you can't enforce this because it violates the Sherman Act, the state court can adjudicate the Sherman Act defense, right? I don't believe so. I think it's exclusive jurisdiction to award damages, yeah, but not as a defense to the contract, right, to the enforcement of the ordinance. They could raise it, they couldn't get damages for it, but they could say you can't enforce this because it violates the Sherman Act. My understanding, and certainly this wasn't part of Judge Berg's decision, but my understanding is that the state courts of Michigan would not have jurisdiction to resolve the Sherman antitrust action. That's exclusive within the federal courts. But we all agree they would have authority to resolve the federal constitutional claims, right? Yes. State courts can do that. The 14th Amendment. Started by mentioning that, and that's wrong. They can resolve that. Absolutely. And as to the antitrust, that's just a question of whether it has to be removed to federal court. And if that's a peril to you, that's really amusing because you're in federal court, you want to be in federal court. So why are you bothered by that? We're trying to use the Declaratory Judgment Act, Your Honor, to efficient, you know, one of the factors under the Grand Trunk case and the paradigm is will the action resolve the controversy? And the federal court is the only court, in our opinion, that has the jurisdiction to resolve the controversy. But why can't some federal judges, such as Judge Berg, be a little skeptical about people threatening each other, but no one willing to have the courage of their convictions? You threaten to enforce, but you never enforce. They threatened to sue going back to 2013. They still haven't sued. Isn't a federal court allowed to say, guys, this is all talk. No one seems willing to do what they say they're going to do. It's six years later. We're going to wait until you do it. And I mean, that's what Judge Berg was saying. And I'm puzzled by why this is either a real dispute, in which case it's just so simple to make it concrete, or maybe it's not a real dispute and this is just all talk. Well, certainly the county has the courage of its convictions, Your Honor, because we've taken... But not enforce it. You haven't enforced it. Well, we have. We're trying to enforce it. We're choosing to take it to federal court. You're treating the idea of the officer actually writing the ticket or citing the ordinance as just a de minimis, sort of, that could happen. We can just let it go. It's just such a de minimis matter. But isn't that the whole crux of the matter? Isn't that when you sort of put your money where your mouth is and actually enforce the law? Well, we view the declaratory judgment statute as a way for the county to enforce the law. Choose your way to do it, which is the way that Judge Sutton articulated. Honestly, we didn't think stopping an ambulance in transport, emergency or non-emergency, was the most efficient way to bring the matter to court. In terms of efficiency, I've been trying to find cases where states or cities... I mean, it quite often happens when laws are passed. So think of abortion, for example. A state or a county wants to pass an abortion law. People come in and say, you passed that law, we're suing the next day. I'm just not aware of situations where you can pass a controversial ordinance or law and the governmental entity can pick the forum for deciding whether it's constitutional. I just don't think that's usually how it happens. It usually is the reverse that will allow DEC actions without incurring damages by the person who would be the object of the enforcement action. But tell me I'm wrong. Tell me, no, no, no, Judge Sutton, there's this whole line of cases where cities and counties and states have been allowed to go to federal court to establish, but pre-enforcement, that the thing they're about to do is constitutional or complies with federal law. Your Honor, you're not wrong. It is unusual. I will certainly concede it's unusual. What does that do to your efficiency point? I would not call it efficient to do something for the first time in 230 years. That forces us to decide very complicated things. Isn't that the purpose, though, Your Honor, of the Declaratory Judgment Act? To allow even putative defendants. So I'm a putative defendant, let's be honest about that. And that's not the only way that declaratory judgment actions are filed. You're a putative enforcer. That would be the norm, how people would think about this. Maybe it is the norm, Your Honor, but why is that not allowed under the Declaratory Judgment Act? If you have a dispute where federal court is ultimately going to be the court with the jurisdiction to resolve it, what is wrong with taking the matter right to the court and moving it along? Declaratory judgment actions usually, and is that correct? Am I right about Michigan state law, too, that the plaintiff usually has to be someone who is in a position to have brought a damages or an equitable relief action? You're not somebody who's the putative defendant, right? You're actually the real plaintiff and you're saying I'm in the posture of somebody who might be able to bring damages or an equitable relief action and I'm just doing it as a declaratory judgment, right? I mean doesn't the Michigan, if I'm remembering correctly, Michigan requires that as a matter of state law. No, I've brought in declaratory judgment actions on behalf of Michigan entities where there was no damages. Michigan governmental entities? Yes. You brought the DEC action to say the enforcement we're about to do is legit under federal law? Not under federal law, under state law. Under state law. I've taken the controversy. State law have the same standing requirements as federal law? Yes, I think it does. There has to be a case in controversy and clearly there is. Why didn't the Federal Department of Justice lo these last three years file DEC actions with all these controversies and pick the forum where these things would be resolved? If you're right, every single one of the things that the national government did the last three years and they were sued about, if you're right, they could have sued wherever they wanted and have the constitutional or statutory dispute resolved in the form of their choice. Aren't I right that if you're right they could have done that these last three years? I mean you should go work for them. They would love you. I think you are right. I think you can take a case in controversy. Now it's going to be decided in the Eastern District. So I haven't taken it to a unique forum. The antitrust claim that they want to raise, in fact they raised it earlier. It's not just we jumped in dispute on a letter. You said a unique forum. There's federal versus state and a lot of people would look at this dispute and say this is first and foremost a question of what Michigan law allows and what this ordinance allows and whether they're compatible and so forth. What STAT did as a precursor to this action was it filed the same type of claim against the Saginaw Valley Medical Control Authority after first appearing in front of the commissioners and challenging the exclusive contract. It then, to get ripe in the challenge against the county, it got licensed and it challenged the Saginaw Valley Medical Control Authority saying under state law you don't have the authority to deny our license because there's no room to practice in Saginaw because of the exclusive contract. That was the Medical Control Authority's position. They challenged that under state law and under antitrust. And the Eastern District held under state law you're not the body, medical control, to regulate the ambulance system within Saginaw County and therefore you must license them under state law and they settled that dispute. Are you making a merits point or a threat point? Are you making a merits point about how the declaratory judgment should be resolved due to this other decision by Judge Stee or are you making a point that the other case shows there's a real threat here? It's a threat, Your Honor, because the only reason they would do that is so they could practice within Saginaw County. So it was a predicate lawsuit in order to get licensed to have standing then to sue the county in order to enable it to be able to practice. That's one way of looking at it but it seems a little question begging given that the dispute has been going on since 2013. They've sued one entity but not you. That seems to suggest reticence, not aggressiveness or real threat as to you. What's the purpose of being licensed if you can't serve? And so we filed within one month of the settlement of that other lawsuit in 2017. And the reason we filed is because obviously now they're going to move into and they were moving into Saginaw County and we saw them operating with Saginaw County. We could have issued a ticket and back off but there's a lot of time you're spending to get the same issue resolved. It's really puzzling to me. Honestly, Your Honor, after they just had closed their federal case, raising state and antitrust issues within a month, bringing it back to the court and saying, in effect, we should have been a party in the first case. Maybe I should have intervened, frankly, in that case. I should have. But not having done that, I saw the Declaratory Judgment Act as a way of advancing the issue because having an emergency transport system is important to the day-to-day operations of my county. And so bringing it to the one jurisdiction that can resolve the issue when there's a case that's just been resolved. Isn't there an administrative process that's set up through the 9-1-1 committee? No, there isn't. There's not an approval process? I mean, I thought I saw this in the brief so I guess I'm wrong. But I thought there was a process that they could review applicants or were some way involved in regulation which has now been completely stayed because of the lawsuits. No. There's not that process? There is no process for that. In fact, the state has policy E which recommends that the counties develop an ambulance system within their community. But there's no overarching jurisdiction administratively over this type of claim. Both whether or not the public health code allows this contract, which the Eastern District in Schwartz already said it could do, or the antitrust claim. There's nothing administratively that would serve the purpose of resolving this suit. Just one other question. So would you agree that a citizen of Saginaw could file a federal action against you and STAT and maybe some others and say, you know, we read the papers, we see some disagreement here, we think there's a dispute, we've been injured because we want more ambulances or less ambulances, whatever their position is. And that would also be then a right controversy where that citizen has standing to bring that case? Sure. A citizen could say, I want STAT for my emergencies if ever I have one. Not MMR. So for every ordinance you have in the city that you haven't taken a position on, if a citizen thinks there's some tension between the law and what someone's doing, they can bring an action in federal court to have federal court merit out whether the city should be enforcing the law or not even though the city hasn't opted to do so for one reason or another? But they could for antitrust or the 1983 action. Yes, a citizen could take this same case and bring it in front of the Eastern District of Michigan, which again is why I'm somewhat puzzled why the court wouldn't say in an admitted controversy, which has just been resolved halfway in the Eastern District, why we can't come to court and finish it off? Just speaking for myself, I'll be all with you. You get me some cases where it's happened. That will really help me. But you'll get your full rebuttal. Let's hear from the other side. The red light's been on for quite a while. Yeah, thank you. Thank you. Good morning. May it please this court. I'm Derek Wilchinsky. I represent STAT EMS. I think there's a few things at the outset I should probably clear up because there's two different lawsuits that you've heard of this morning. And they're both different lawsuits. And if we go back to 2013, this is the time in which Mr. Van Essen mentioned these initial threats were made. What needs to be understood is at that point, STAT went in front of the Saginaw County Board of Commissioners. I was there. I remember this. And I remember this well because on the ride up there, the Tigers were playing the Red Sox. I'm interested in the Tigers game, too. But let me just get to the practical point, which I'm just – I'm really puzzled from both perspectives. Sure. It seems like you guys do have a real dispute. No. No, not necessarily for Declaratory Judgment Act purposes, but you don't think it would be helpful to resolve exactly how state and local law interact on this front? No. And I'll tell you the reason why. This is why I'm going back to 2013. But you are operating in the county. Yes. We are not operating illegally either. Okay. That's your position. I got it. Good for you. Yes. No, but there's a – Isn't there the risk that they're going to issue a ticket saying you're violating the county ordinance? Yes. Of course. It's what they should have done. It's what they should be doing. Okay. So my point is I don't care if this is the venue, this is the case number where you resolve this, but I'm just a little puzzled why it isn't in both clients' interests to actually figure out what is allowed here, first under state and local law and then, if need be, under federal law. That just surprises me. I'm not sure why it would. We don't have a dispute, we being stat. We don't have a dispute with the county. See, we're operating in the county right now. We've been operating in the county since before 2013. That's one of the misconceptions I have to clear up. There is no licensure, as Mr. Van Essen referred to it, by the Medical Control Authority. There's only one entity in Michigan that licenses ambulance companies. This is a home rule debate. State. This is just a pure home rule debate. You may be right about it, but it also may be possible that under Michigan law, counties can actually decide to have exclusive arrangements for ambulance services. That's a different issue, though, Judge. Because, sure, they can. Under the statute that Mr. Van Essen cited, the county can say, we have one ambulance service providing county EMS. Each municipality within the county, by the way, can choose to hire my company, or Mr. Van Essen's company, or a third party company. And that company would provide EMS service, 911 service for that municipality, for the city. That's why there's no dispute here. If they want to ticket us and create a dispute, that's fine. They can do that. But we don't have a dispute. There's nothing about what they're doing with regard to us operating in Saginaw right now that we have a dispute with until they issue us a ticket. And they haven't done that, and it doesn't look like they're going to do it. Your competitor, I forget the name of your competitor. MMR, Mobile Medical Resources. MMR has some kind of licensure or some kind of blessing from the county that you don't have. You have to articulate what it is, but isn't that right? Yes. MMR has, so there's two things. They have one thing that we have, and that's oversight, not a license, but oversight by the medical control authority in Saginaw. Again, the state, only the state licenses in Michigan. The other thing that they have, and this is just very simple, it's a contract. They have a contract, which is not a blessing by the county, but it's an exchange of services. You provide 911 for the county, we will pay you to do it. Now, by the way, in providing services for the county for payment, and I have to back up. It's not the county that's paying, it's the providers that are paying. Okay? It's an exclusive contract. But it's an exclusive contract saying only you will be dispatched for 911 calls on a county-wide basis. In exchange for that, by the way, you have to do the dispatching for the county as well. Okay, that's fine. Again, this comes back to, and Judge Sutton, you keep raising this, there's a dispute there. There's not. Until we actually get a ticket, there's no dispute. So you don't get access to the 911? I'm sorry? Is it a problem for you that your client doesn't get access to the 911 calls? Yes, but in a different way than what you're referring to. Okay? Because this is why I keep going back to 2013, and I know you would all like me to move on from that, but this is where it's important. We went in front of the Board of Commissioners in 2013 because we had learned that the Board was extending early the 911 contract and just giving it again to MMR, just renewing it. And so our sole point in going in front of the Board that day was to say, wait a minute, you need to open bid this. You need to put this out there. You're a government entity, a municipal entity. You're a public body. You need, by the way, by your own internal rules in the County of Saginaw to bid this out. And the Board of Commissioners said, no, we're not going to do that. We're just going to extend the contract. Okay, that's fine. So they now have a contract to do the 911 and to do the dispatch. That's not a problem. That doesn't mean, by the way, that we can't do inter-facility transfers within the county, and it also doesn't mean that anybody who has a 911 emergency can't pull out their phone and call us directly. There's nothing that prohibits that. Except, according to Saginaw, they said, wait a minute, you're in violation of our ordinance. Okay, well, number one, we wrote to the County of Saginaw to try to comply with the ordinance. We said, we'll go in front of you. Whatever we need to do to comply, we'll do it. They never call us back on it. There's no reason, there's no wonder as to why, but they've never ticketed us. Help us think through a couple things. I think some of these were Judge Nalbandian's questions with your friend on the other side. Sure. If a ticket's in force, so if they issue a ticket, you're allowed to defend on the ground that it's inconsistent with state law, the ordinance. That's right. Help us make sure we're getting the way the antitrust law, because you did mention antitrust in some of these letters. Is what would happen, would the state court be able to use antitrust as a defense, or would it have to be removed to federal court at that point? If you know, yes. If you don't, don't worry about it. Sure. It could be used as a defense. Absolutely. You could do that in state court? You could resolve the antitrust? Yes. Are we right that when it's a city or county, no trouble damages? Are we on the same page there? That's my understanding. How about fees? Maybe we're wrong about that. Do you know the answer? I don't know. I'll be honest with you, I just don't know. Okay. Where do you think this should be resolved if there's a ticket issued? In state court? I think it needs to start in state court. That's right. Absolutely. At some point, could it reach federal court if, let's just say for the sake of argument, we kept losing? Actually, it doesn't matter who loses because you can keep going up the ladder. Eventually, this case could end up at the Michigan Supreme Court. Even after that ruling, it could be then filed in federal court at some point. I can't conceive of it. Here's one of the big issues, and we all keep missing it, but one of the issues that is attendant in this case is that it's not the ordinance in and of itself that's problematic from either a constitutional or an antitrust perspective. It's the carrying out. It's the enforcement of the ordinance. That's why there's no case or controversy here with regard to federal issues. We talk all the time, and I remember this as a kid. People say, well, you made a federal case out of it. We say that a lot when we're kids because we just don't know what that really means. What does it mean to have a case or controversy in federal court, an Article III court? In this case, it would have to be a constitutional issue, equal protection, due process, which we raised, by the way, in the Saginaw Valley Medical Control Authority case, or it would have to be an antitrust issue. But this statute in and of itself, just existing, we believe it violates state law. It's never been enforced, so we don't have to worry about that. But with regard to whether it's a constitutional or an antitrust issue, it can only come to this court based on how it was enforced. Let's just take antitrust. As this ordinance currently exists, there's no antitrust issue there, but if it's enforced for the sole purpose of protecting one company and a government entity does that, we may have an antitrust issue. I want to clarify what you just said. The way the ordinance is currently being enforced, there are no antitrust problems. Or constitutional issues. That's right. Currently. That's right, of course. Because you're not being ticketed. No, because we don't know the motivation. You're saying that it says, the face of the ordinance says, there shall only be one provider or whatever. No, the face of the ordinance says that if you want to practice EMS within Saginaw County, you have to get Board of Commissioners' approval, and it has to be either by contractor, and I believe it's a need. So in other words, you have to show you have a contract within Saginaw County and then they will let you come into the county. There's no word that says they're licensing you, but it's an allowance to come in. It's not, unfortunately, judge what you said. So the ordinance requires you to go in and get approval. Right. You haven't gotten approval, but you're operating, but they're not ticketing you. Right. So there's no problem right now. That's right. And I would add one other thing, too. We've written to the board to say, okay, consider us, and we've never gotten a response back to that. Maybe that's the response to my question. I thought there was some administrative means to potentially respond to the 911 committee. There is. What is it? It's the EMS Coordinating Committee, the EMSCC. Now, they've punted on this issue because there's currently a lawsuit  Was that underway at all before the lawsuit? I don't recall, quite honestly, if we had gone to them during the pendency of this lawsuit or if it was in the previous lawsuit. Is that a state entity or a county entity? What is that? Yeah, it's not a state entity. It's not governed by the state, but it's an association. It's probably the best word of EMS providers, professionals, members from the state that provide it. It's an advisory capacity, but they do have a lot of authority within the EMS community. If they were able to resolve this, they would have, but they didn't want to take the issue up. A way to put where you are on this is without issuing you tickets, your client tickets, you have no objection under federal antitrust or federal constitutional law or, for that matter, state law about what's happening. As to applications by your client, none of those things have been triggered because they haven't been denied yet. That's right. It would be a denial unfairly or unconstitutionally or an enforcement unfairly or unconstitutionally that would trigger someone's right to sue is the way you're looking at it. Of course. I was pushing the appellant hard on this point that I wasn't aware of a state or county case, government case where they sued to say what we're about to do is constitutional, but I'm also not aware of a case that shuts that down, particularly at the county level. Are you aware of a case where a county or city brought a deck action to say what we're about to do is kosher under the U.S. Constitution, and the court responded, wait a second, you can't do that? No, and why would you? For this reason, if that were found to be a case in controversy, whether it's just in Article III review for either standing, rightness, muteness, or under the Declaratory Judgment Act, then everything becomes something you could bring into federal court under the Declaratory Judgment Act. If you let this case proceed and come in, then everything could be argued. Judge Berg pointed out in his opinion that this case is unique because it's the inverse or the flip side to what you normally see. So you had mentioned abortion issues, and he pointed out the gun rights case where to say, look, we have an unconstitutional statute that's here. Don't make us violate it before we can come into court. That would be our position traditionally in this case. Hey, don't make us. Usually you're the one. Yeah, we're the ones that do this. Exactly. Yeah, but that's not the case here because we haven't been ticketed. We don't have an issue to be raised. Now, we may have other issues with the dispensation and the oversight of medical control within Saginaw, but those are separate issues. Those are day-to-day procedural issues. They're not substantive with regard to a specific ordinance or, you know, Judge Radley, you may have raised the issue earlier about this contract going back to 2013. Well, it's a contractual issue. The contract's not up for renew. At some point it might be, and my client may want to bid on it at that stage. We're not there. This isn't the kind of case that needs or should be in federal court. It doesn't meet any of the requirements under the Declaratory Judgment Act or any of the other procedural realms that we take a look at. I mentioned them earlier, standing, rightness, you know, that sort of a thing. This is, quite frankly, a situation that we were rushed into federal court on a case that we had no intention of filing at the time. Literally, Mr. Van Essen said it, within 30 days of us resolving the previous case. Against, by the way, and I need to make sure everybody on this panel understands, these are separate entities. We sued the Medical Control Authority back at the end of 2013, and the reason we sued the Medical Control Authority is because they refused to provide oversight to us, not licensure. Again, I keep coming back to this. We are licensed by the state. The Medical Control Authority in Saginaw has to provide oversight to us. It's not permissive. It's mandatory, and they refused to do it, and we sued. And at the beginning of that lawsuit, the argument from the other side was, look, stat applied, we denied their application. We didn't think they met our requirements. We treat everybody equally and fairly. By the end of the discovery process, what we found out, and what was admitted to by the Medical Control Authority was, yeah, we're out here to protect MMR. We want one provider in all of Saginaw County. That's all we want. Now, you might think as a panel, well, that's a good idea. One provider balances out the community. They don't need any more. You may think that's a great idea, but that's not the state law in Michigan. I may have written an entirely different statute, and someday I might run for the legislature and get to do it, but that's unfortunately not our system in Michigan. Everybody that can provide 24-7 service and pays their fee gets licensed, and every Medical Control Authority in our state has to provide oversight. Thank you. I appreciate your time today. Thank you. Mr. Van Essen, if you'll rebuttal. Well, this is a unique case. That much is certain. Frankly, I asked for the averments that my brother at the bar has just given Judge Sutton, and he would not give them. Go home happy. Go home happy. Declare victory. I am going to go home. Your Honor, I'm going to go home happy because I couldn't get those promises. So we're all good. We are all good because the status quo is satisfactory to my client. It doesn't jeopardize our system, and I'm going to hold counsel to the representations he made. The only thing I would say in my defense, I challenge the Court to read those letters and his averments today. He's going to be super happy if you accept his averments, if that's the way we're going to talk, as long as you don't issue a ticket. And if you issue a ticket, I suspect things will change. So if you're saying you're not issuing tickets, he's going to leave here just as happy as you are. Are you saying no tickets? I don't know what the future brings, but right now our system is, let me just say in all candor, our system could be threatened. The reason we're doing this, just so you understand, is because the Center City Ambulance Services subsidize the rural activities. We get pledges from MMR that they will meet a certain average response time in the rural areas. We would never get that, Your Honor, without giving them exclusivity in the City of Saginaw. And whatever they're doing is not impeding that system right now, which is why we have an escape clause in our ordinance, which, by the way, they haven't exercised properly, but that's for another issue. So what I'm saying is this litigation has preserved our system up until this point. And given his representations to the court, that he doesn't see an antitrust violation with the status quo in Saginaw County as it currently exists, I'm content with that. I asked for that before, I've gotten it now, and I am content. I can't promise what the future is. He can't either in the sense that if things change there might be a ticket issue and we will end up either. I still think, in answer, Your Honor, to your question, what you got was we could have litigation in state court, at the district court level, at the circuit court level, at the court of appeals level, at the Michigan Supreme Court level, and then come to the Eastern District of Michigan and resolve the antitrust case. I don't think that's efficient. And I think an attorney in my position can still take that to the end jurisdiction and say, let's get on with it. If it's federal court that's the exclusive arbiter of Sherman antitrust cases, let's get there without all those interim steps. In the spirit of agreement, I think the results are confidential,  We did. We did. Thank you. All right. Thanks to both of you. We appreciate your candor, your written briefs, your oral arguments. Thanks for answering our questions, which we're always grateful for. The case will be submitted, and the clerk may adjourn court.